IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

v.

Case No. 2:17-cr-170
CHIEF JUDGE EDMUND A. SARGUS, JR.

JOY MCSHAN EDWARDS,

Defendant.

## OPINION AND ORDER

This action comes before the Court after a bench trial on the one-count indictment of witness retaliation in violation of 18 U.S.C. § 1513(e) against Defendant Joy McShan Edwards as well as a Motion for Judgment of Acquittal. For the reasons that follow, the Court **DENIES** the Motion for Judgment of Acquittal and finds the Defendant **GUILTY**.

### I. BACKGROUND

**A. Procedural Background**

The Defendant was indicted on August 3, 2017, on one count of retaliating against a witness in violation of 18 U.S.C. § 1513(e). Thereafter, the Defendant and the Government waived trial by jury. On December 11, 2017, the parties appeared before the Court for a bench trial.

The Government presented three witnesses at the trial, including United States Marshall Zach Denzler, the Confidential Informant ("CI 1") affected by Defendant's social media posts, and DEA Special Agent Matt Heufelder. In addition, Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

## B. Findings of Fact

In 2015, Defendant's two brothers, Frederick and David McShan were arrest for running a drug trafficking ring in Steubenville, Ohio. In March of 2017, both brothers were tried before a jury. *See USA v. McShan et al.*, 2:15-cr-24 (S.D. Ohio). At the trial, several witnesses testified that Frederick and David McShan traveled to Illinois to buy heroin for resale in the Ohio Valley. (*Id.* ECF No. 328 at 4–8.) Frederick McShan was convicted by a jury of eleven counts of conspiracy to possess with the intent to distribute heroin and one count of conspiracy to commit money laundering. David McShan was convicted of one count of conspiracy to possess with intent to distribute heroin and possession with intent to distribute heroin. At one point during the brothers' trial, the U.S. Marshalls removed several of Frederick and David McShan's relatives and friends from the courtroom for illegally video recording witnesses' pictures and testimony.

CI 1 aided the Government in the prosecution of the McShan brothers by serving as confidential informant against the brothers prior to their arrest and as a witness at the brothers' trial in Columbus, Ohio for the Government. CI 1's help included allowing law enforcement to fit him with electronic equipment that recorded his telephone calls with Frederick McShan and videotaped any place he went with Frederick McShan.

The McShan brothers, Ms. Edwards, and CI 1 are from Steubenville, Ohio. Steubenville is located approximately 150 miles from Columbus, and has an estimated population of 18,303 residents.[1] Some Steubenville residents were present at the McShan brothers' trial during CI 1's testimony.

---

[1] Steubenville, Ohio, http://www.city-data.com/city/Steubenville-Ohio.html (last visited January 2, 2018).

1. **Defendant's Social Media Posts**

Beginning on May 11, 2017, prior to sentencing of her brothers, Defendant began posting doctored photos of CI 1, depicting him on the witness stand and labeling him, among other terms, as a "snitch." (*See* Government Exhibits 2–7.)[2] The first image Ms. Edwards posted on her Facebook contains a photo of CI 1's face cropped onto a body which sits on a witness stand pointing his finger, as if at a defendant and includes the caption "Niggas like you get a Nigga super bowl numbers." (Gov. Exhibit 2.) The image generated comments, including one person asking whose photo is in the post and another commenter responding with CI 1's nickname. (*Id.*) At different points in the comment thread Ms. Edwards posted additional comments such as "fuck him!" and "Look at that bitch ass snitch lips! They are crack up and ashey [sic] white from running it so much! His bitch ass needs some WD40!" (*Id.*)

On May 17, 2017, Defendant posted an image to her Facebook account with a photo of CI 1 cropped on a body of a person holding a T-shirt with a badge printed on it, and the caption below the photo stating 'This nigga look like he just snitch for fun," with laughing faces and a skull emoji also in the caption. (Gov. Exhibit 3.) On the same day, Defendant posted the comment "Snitch (rat image) ass bitch!" with a photo attached of a person with CI 1's face cropped in wearing a t-shirt with the words "Stop Snitching" in a stop sign pattern. (Gov. Exhibit 4.) In a thread of comments below the image, Defendant responded to a commenter's question "Who is that?" by writing "This guy is snitching! He snitched on my brothers! And lied about everything!" (*Id.*) On May 18, 2017, Defendant posted on her Facebook account the comment "Snitching like a bitch!!!!" with a photo of CI 1's face cropped onto a picture. (Gov.

---

[2] The parties stipulated that at the time of her arrest, Defendant "stated to arresting agents that, while she did repost Facebook postings of others regarding Confidential Informant #1, she did not create any of the photos, did not threaten Confidential Informant #1, and asserted that such activity was protected by her freedom of speech." (Gov. Exhibit 7.)

3

Exhibit 5.) On May 21, 2017, Defendant posted another image to her Facebook account of animated hands, handcuffed, with the caption "Man up…shut your mouth take the charge and don't snitch." (Gov. Exhibit 6.)

### 2. CI 1's Testimony

At trial, CI 1 testified that after Ms. Edwards posted the first images of him and labeled him a snitch, he began to receive numerous Facebook friend requests from people he did not know, which caused him to fear for his safety and for the safety of his family. He first became aware of the Defendant's actions when he received multiple text messages from friends and/or acquaintances, notifying him of the posts. He acknowledged that after he testified against the McShan brothers, a few people knew about his testimony but that after Ms. Edwards posted his photos to her Facebook, people began approaching him and recognizing him as a snitch. As a result, he fears visiting Steubenville.

CI 1 has four children who reside in Steubenville. He testified that he fears for his safety and the safety of his children if he returns to Steubenville to see them. Prior to the Facebook posts, CI 1 visited his children on a daily basis, but now, only sees them occasionally. CI 1 further testified that Defendant's nephew killed his brother in 2013. Having observed CI 1's testimony, the Court finds him credible.

## II. LAW AND ANALYSIS

18 U.S.C. § 1513(e) was enacted to protect witnesses, victims, and informants by prohibiting an individual from:

> . . . knowingly, <u>with the intent to retaliate</u>, tak[ing] any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense. (Emphasis added).

4

18 U.S.C. § 1513(e).

From the plain language of the statute, the Government has the burden to prove beyond a reasonable doubt that (1) Defendant knowingly took an action with intent to retaliate against CI 1; (2) Defendant harmed CI 1; and (3) her retaliation was induced by CI 1's testimony against her brothers. 18 U.S.C. § 1513(e); *United States v. Camick*, 796 F.3d 1206, 1220 (10th Cir. 2015); *see also United States v. Stoker*, 706 F.3d 643, 646 (5th Cir. 2013). Because proving intent is a "difficult task", courts do not "require[] the government to produce a 'smoking gun' that explicitly reveals the contents of defendant's mind." *Camick*, 796 F.3d at 1220 (quoting *United States v. Ashley*, 606 F.3d 135, 140–41 (4th Cir. 2010). "Instead, intent 'may be proven via circumstantial evidence; in fact, it is rarely established by other means." *Id.* (quoting *United States v. Nguyen*, 413 F.3d 1170, 1175 (10th Cir. 2005).

## A. Judgement of Acquittal

At the close of the Government's case-in-chief, Defendant moved orally for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. According to the Defendant, Section 1513(e) is unconstitutional and is violative of the First Amendment. Federal Rule of Criminal Procedure 29(a) provides that "[a]fter the government closes its evidence or after the close of all evidence, the court on the defendant's motion must enter a judgment of acquittal of any offence for which the evidence is insufficient to sustain a conviction."

In the Court's Opinion and Order on the Motion to Dismiss (ECF No. 36.), the Court held that determining whether Defendant's speech is protected by the First Amendment required the Court to review the context of her Facebook posts and her intent in posting the material, and that such a finding would be inappropriate at that stage in the proceeding. The Court further held that the scienter requirement of 18 U.S.C. § 1513(e), in requiring the Government to prove beyond a

reasonable doubt that the Defendant <u>intended</u> to retaliate, renders the statute constitutional, but that a failure to prove Defendant's intent would result in her actions remaining within the First Amendment umbrella of protection. *Virginia v. Black*, 538 U.S. 343, 365 (2003) (upholding statute's prohibition on cross burning, but striking down the *prima facie* evidence provision it contained as overbroad, finding criminalization without review of the context "blurs the line" between acts of intimidation and core political speech.).

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." *Id.* at 358. The First Amendment though, does not extend to speech held to be unprotected and "permits 'restrictions upon the content of speech in a few limited areas, which are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id.* at 358–59 (2003) (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382–83 (1992)). Some words, "by their very utterance" cause injury and do not receive constitutional protection. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem.").

True threats fall within the category of unprotected speech. *See, e.g., United States v. Hanna*, 293 F.3d 1080, 1084 (9th Cir. 2002) ("The Court [has] left no doubt that true threats could be criminalized because they are not protected speech."). The Government's prohibition on true threats exists to "protect individual from the fear of violence" and from "the disruption that fear engenders." *Virginia*, 538 U.S. at 360 (2003) (citing *R.A.V.* 505 U.S. at 388).

Protecting a witness from retaliation is similarly permitted where the government proves the speaker's intent to retaliate. *See United States v. Sergentakis*, Case No. 15-cr-33, 2015 U.S.

6

Dist. LEXIS 77719, at *14–15 (S.D. N.Y. June 15, 2015) (holding that defendant's harassing actions unprotected by the First Amendment in the witness retaliation context wherein they were "thinly veiled" revenge for victim's cooperation with investigation that led to defendant's guilty plea on other charges).

As discussed below, the Court finds that the Government has proven Defendant's intent to retaliate against CI 1 beyond a reasonable doubt. Based on the finding of intent to retaliate, Defendant's acts were not protected by the First Amendment. *Virginia*, 538 U.S. at 362 (holding Virginia's statute criminalizing cross burning does not "run afoul of the First Amendment insofar as it bans cross burning with intent to intimidate."). Accordingly, Defendant's Motion for Judgment of Acquittal is **DENIED**.

### B. Trial Verdict

The Court now turns to the elements of 18 U.S.C. § 1513(e) to determine if the Government has proven each one beyond a reasonable doubt.

#### 1. Defendant's Intent to Retaliate

Special Agent Matt Heufelder of the Drug Enforcement Administration ("DEA") testified to the danger informants face once labeled as a "snitch." Special Agent Heufelder has been with the DEA since January 1996. Over the past year he has worked as a group supervisor, overseeing eleven to twelve agents and task force agents in the Columbus office. Prior to his supervisor role, he was a special agent tasked with investigating federal drug crimes in Columbus and Central Ohio. He has experience handling hundreds of confidential informants, whether as the agent assigned to manage the confidential informant, overseeing the agents assigned that task, or being part of a team that protects the confidential informant. According to Heufelder, the term "snitch" signifies someone who is cooperating with law enforcement and is

7

perceived by all as a threat.

Once labeled a snitch, in his experience, there is a much greater possibility of harm befalling that individual or their family. Courts have recognized the greater possibility of harm befalling someone labeled a snitch, particularly in the prison context by finding that when a prison guard "label[s] an inmate a snitch . . . [it] constitutes deliberate indifference to the safety of the inmate." *LaFountain v. Martin*, 334 F. App'x 738, 741 (6th Cir. 2009) (quoting *Benefiled v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001)); *see also Valandingham v. Bojorquez*, 866 F.2d 1135, 1138–39 (9th Cir. 1989) (reversing grant of summary judgment for defendants where inmate produced evidence tending to show prison officials called him a snitch in order to subject him to life-threatening retaliation by other inmates); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984) (per curiam) (holding that claim that prison officials labeled inmate a snitch, thereby exposing him to inmate retaliation, could not be dismissed before service); *Reece v. Groose*, 60 F.3d 487, 488 (8th Cir. 1995) (recognizing that reputation as a snitch places inmate "at a substantial risk of injury at [other inmates'] hands"); *Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008) (officer who falsely called inmate a "snitch" or "rat" not entitled to qualified immunity). Indeed, the purpose of the Victim and Witness Protection Act of 1982, of which § 1513 is a part, is "to strengthen existing legal protection for victims and witnesses of federal crimes." *United States v. Ferrugia*, 604 F. Supp. 668, 674–75 (E.D. N.Y. 1985).

Courts have inferred retaliatory intent from circumstantial evidence including,

> "the natural consequences likely to flow from the defendant's actions," including fear on behalf of a witness, [*United States v. Stoker*, 706 F.3d 643, 646 (5th Cir. 2013)]; the lack of a justifiable reason for defendant's adverse actions against a witness, *United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014); evidence showing the defendant was aware the witness had provided information to the prosecution, had spoken with others who carried out the retaliatory actions, and did not like snitches, *United States v. Tapia*, 59 F.3d 1137, 1141 (11th Cir. 1995); and evidence describing "the context in which the alleged [retaliatory actions]

8

were made, the prior relationship between [the defendant] and [the victim]," and the effect the retaliatory actions had on the victim's emotions or conduct, *United States v. Brown*, 937 F.2d 32, 36 (2d Cir. 1991). In other similar contexts, [courts have] rules that "[t]iming can be circumstantial evidence of retaliatory intent" *Poole v. Cty. Of Otero*, 271 F.3d 955, 961 (10th Cir. 2001) (retaliatory prosecution case), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006).

*Camick*, 796 F.3d at 1220–21. The Government contends that Defendant posted images and comments outing CI 1 as a snitch to get back at him for his testimony against her brothers and that her posts to "stop snitching" implicitly warned him "or else."

Similar to the case at hand, the Seventh Circuit held that an explicit solicitation to commit violence is not required for a conviction under 18 U.S.C. § 373, as long as the solicitor's message was implicitly communicated. *United States v. White*, 698 F.3d 1005, 1014–15 (7th Cir. 2012). In *White*, the defendant ran a white supremacy website. *Id.* Following the criminal conviction of a fellow white supremacist, the defendant posted the foreman of the jury's personal information to his website as follows:

> Gay anti-racist [Juror A] was a juror who played a key role in convicting Matt Hale. Born [date], [he/she] lives at [address] with [his/her] gay black lover and [his/her] cat [name]. [His/Her] phone number is [phone number], cell phone [phone number], and [his/her] office is [phone number].

*Id.* at 1009–10. A jury convicted White of soliciting a violent federal crime against Juror A. Subsequently, the district court granted White's request for judgment of acquittal, finding that the government failed to present sufficient evidence to sustain White's conviction. *Id.* The Seventh Circuit reversed, finding that a reasonable jury could have found the government met its burden. *Id.* at 1012–1014 ("Whether White's post was a criminal solicitation depended on context, and the government provided ample evidence of such context from which a rational jury could have concluded that the post was an invitation for others to harm Juror A.").

As in *White*, the cumulative circumstances surrounding Defendant's posts as well as the

9

posts themselves evidence Defendant's intent to retaliate against CI 1. During the investigation of Defendant's brothers, CI 1 wore a wire and cooperated with law enforcement to gather evidence against both McShans. He then testified against them in their federal criminal trial, which ultimately ended in convictions against both brothers for heroin trafficking. David McShan is currently serving 74 months in prison while Frederick McShan is serving 288 months. Defendant's posts outed CI 1 as a "snitch" and "rat" for his testimony, doctored his picture to display him testifying on a witness stand, and in a thinly veiled warning, instructed him to "stop snitching." In yet another post, Defendant admonishes him to "Man up…shut your mouth take the charge and don't snitch." (Gov. Exhibit 6.) Finally, she posted "fuck him!", which the Court views as an encouragement to intimidate or harm CI 1. (Gov. Exhibit 2.)

Based on CI 1's testimony, identifying a witness as a snitch in Steubenville, Ohio presents similar dangers to that witness as identifying a prisoner as a snitch in prison. CI 1 testified to the danger of being labeled a snitch in Steubenville. After Defendant, who lives in Steubenville, repeatedly outed him as a snitch to her Steubenville Facebook friends, CI 1 stopped returning to Steubenville as often, so as not to put himself in danger.

As the finder of fact, the Court is tasked with considering the totality of the evidence and determining whether or not the government has proven the Defendant acted with the intent to retaliate. The Court finds, from the record that there is no competing or other purpose for which Defendant's postings were made, other than to retaliate. There is no evidence that Defendant and CI 1 are acquaintances, had mutual friends, or other connection. The only link is that Defendant knew that CI 1 testified against her brothers, who were convicted. The Court concludes that the only logical reason for Defendant to post the information at issue was to retaliate against the CI 1 for testifying against her brothers.

Based on these circumstances, from the increased danger to a person labeled a snitch in Steubenville specifically, Defendant's clear anger at CI 1 for his testimony, and her admonitions to CI 1 to "stop snitching," the Court can infer her intent to spread awareness of CI 1's conduct in order to "get back at him."

**2. Harm Caused to CI 1 From Defendant's Facebook Posts**

CI 1 testified against Defendant's brothers in open court at their trial. Some Steubenville residents were in attendance. CI 1's identity as a witness was therefore known by some individuals at the time Defendant posted his photo to her Facebook page, labeling him a "snitch." In fact, the photos Defendant posted also appear to have been posted previously by other Facebook members and then shared on her Facebook page. (*See* Gov. Exhibits 1–7.)

Although CI 1 testified in open court at the McShan brothers' trial, the trial took place in Columbus, Ohio – roughly 150 miles from Steubenville, Ohio. The distances between his home town and the trial lessened CI 1's initial exposure. While the McShan trial was reported in the local newspapers, the CI 1's name never appeared in any of the articles.

According to CI 1, he did not receive negative attention for his testimony or cooperation until after Defendant posted the photos and comments of him to her Facebook page. He testified that prior to the posts a few people knew about his testimony, but he could still walk in public in Steubenville without anyone trying to cause him harm. After the photos were posted, however, he testified that everything changed. He received a multitude of Facebook friend requests from strangers and from fake accounts. He believes these requests are from persons seeking his personal information. He further testified that he cannot go out in Steubenville without being approached in public. As he described it, in Steubenville, those who approach him want to cause him physical harm.

11

U.S. Marshall Zach Denzler testified that at the time Defendant posted the images and comments to her Facebook account she had over 600 friends, meaning that at least 600 people were then potentially informed of CI 1's cooperation.

Taking all of this into account, the Court finds that the Government successfully met its burden in proving beyond a reasonable doubt that Defendant's actions, in furthering CI 1's exposure, caused him harm.

### III. CONCLUSION

Based on the foregoing, the Court finds that the Government has met its burden of proving beyond a reasonable doubt that the Defendant knowingly, with the intent to retaliate, took action by posting images of CI 1 and comments outing him as a snitch and warning him to stop snitching, harmful to CI 1 because of his cooperation with law enforcement and testimony against her brothers at their criminal trial. Accordingly, the Court finds Defendant **GUILTY** of witness retaliation in violation of 18 U.S.C § 1513(e).

**IT IS SO ORDERED.**

1-17-2018
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**